**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0164n.06

**No. 18-5618**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Apr 01, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TRISTAN HALL, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CITY OF WILLIAMSBURG, et al., | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellees. | ) | |
| | ) | |

**BEFORE: KETHLEDGE, WHITE, and BUSH, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**

Plaintiff-Appellant Tristan Hall appeals the district court's orders denying his motion to disqualify the district judge; dismissing his malicious prosecution claim against Defendant-Appellees Richard Baxter and Allen Trimble and his intentional infliction of emotional distress claim against Trimble; and enforcing a settlement agreement with Defendant-Appellees Wayne Bird and the City of Williamsburg, then dismissing the case for failure to prosecute when he refused to sign settlement documents. We AFFIRM.

## I. BACKGROUND

### A. Facts

#### 1. The Solicitation Charge

On January 10, 2013, an anonymous posting under the pseudonym "Serious as a Heart Attack" on the internet site Topix offered a payment of $5000 in exchange for the murder of

Melissa Jones and concealment of her body. (R. 31, PID 346.) Melissa Jones (nee Davis) reported the posting to the Kentucky State Police (KSP) and the investigation was assigned to Trooper Jay Sowders of Post 10 in Harlan. Sowders obtained a search warrant and served it on Topix for the purpose of identifying the Internet Protocol (IP) address used to post the solicitation. After Topix identified the IP address, Sowders used the information to subpoena subscriber information from Time Warner. Time Warner answered the subpoena with information that connected the Topix posting to a subscriber by the name of Tristan Hall, with an address in Whitley County, Kentucky.

On May 13, 2013, Sowders transferred the investigation to KSP Post 11 in London and the case was assigned to Trooper Richard Baxter. On May 15, 2013, Allen Trimble, the Commonwealth Attorney for Whitley and McCreary Counties, instructed Baxter to obtain an arrest warrant. Baxter then made a criminal complaint charging Hall with solicitation to commit murder and obtained an arrest warrant. Baxter arrested Hall on the warrant the next day. The local news reported Hall's arrest, stating that he had been charged with "murder." (*Id.* at PID 348.)[1] The state court arraigned Hall and denied his bond request after determining that he was a danger to the public.

On May 21, 2013, the state court held a preliminary hearing. Baxter testified that Melissa Jones viewed the Topix post as a serious threat. However, Baxter had not personally spoken to Jones. The state court determined that there was probable cause to believe that Hall had committed a felony and the matter was bound over to the grand jury. On June 17, 2013, Baxter testified before

---

[1] Hall alleges that he was charged and arraigned for murder, not solicitation to commit murder. In his consolidated response to the motions to dismiss, Hall attached affidavits from family members, media reports, and police documents in support of his claim that he was charged with murder. Although Hall's insistence that he was charged with murder is supported by news accounts, it conflicts with the actual criminal complaint; Baxter filed a criminal complaint that charged Hall with solicitation for the crime of murder referencing the Kentucky statute for murder, but explicitly using the word "solicitation." (*See* R. 34-1.) The district court appropriately relied on the information contained in the original criminal complaint rather than assuming the truth of Hall's contrary allegations. As a result, we do not consider Hall's arguments that the court "refused to consider whether there was probable cause for the initial charge of murder." (Appellant Br. at 31.)

a Whitley County grand jury, which returned an indictment against Hall for solicitation to commit murder. Baxter told the grand jury that Hall had been issued a concealed carry permit before the Topix posting.

Over a year later, on August 21, 2014, Trimble recused himself and eventually requested that Assistant Commonwealth Attorney Jackie Steele replace him. The state district court released Hall from home incarceration and removed all bond conditions the following year on September 10, 2015. The court granted Steele's motion to dismiss the solicitation charge in February 2016.

### 2. The Intimidation Charge

Prior to his indictment on the solicitation charge, Hall had been admitted to Dayton Law School. Dayton rescinded Hall's acceptance in May 2014 after learning of his arrest. Hall claims that Dayton rescinded his acceptance because Trimble "made contact with the law school to inform it of Hall's charges, in an effort to sabotage Hall's acceptance and thus his future career as a lawyer." (*Id.* at PID 357.) The next month, in June 2014, Hall filed a bar complaint against Trimble for allegedly reporting his arrest to Dayton.

Hall was in a relationship with a woman named Angela Reeves during this period. On eight occasions, Reeves contacted Trimble regarding Hall's law-school acceptance and the solicitation prosecution. On June 11, 2014, Reeves left a voicemail message for Trimble stating: "[t]he rumor . . . is your goanna [sic] let Hall off the [Solicitation Charge] and if you do not find him guilty I will deliver his dead head to your lobby with blood all over it. You better find him guilty." (*Id.*) Trimble then initiated charges for intimidation of a legal participant against Hall and Reeves. On June 24, 2014, officer Wayne Bird arrested Hall on the warrant, which asserted that Hall and Reeves placed threatening phone calls to Trimble in order to intimidate him. The following day, Trimble moved the court to set aside Hall's bond on the solicitation charge due to

Hall's arrest for intimidation of a legal participant. Trimble later told the media that the calls on which the charge was based indicated that Hall was going to harm Trimble for his prosecution of the solicitation charge. Trimble recused himself on August 21, 2014 and Steele took over the prosecution. The Commonwealth dismissed the intimidation charge due to its failure to indict within 60 days.

Approximately four months later, the Commonwealth charged Hall with retaliation against a legal participant. Steele presented this charge to the grand jury on February 2, 2015, and the grand jury indicted Hall on the charge on March 2, 2015. Hall alleges that "Trimble and/or Steele" directed the law enforcement officer who investigated the charge, Wayne Bird, to give "false and perjured testimony." (*Id.* at PID 362-63.) The Commonwealth later moved to dismiss the retaliation charge on February 11, 2016.

### 3.    Other Crimes

In addition to solicitation of murder and intimidation of a legal participant (later re-charged as retaliation against a legal participant), the Commonwealth also charged Hall with hindering prosecution, contempt, harassing communications, and insurance fraud. Assistant Commonwealth Attorney Robert Hammons prosecuted Hall on the hindering prosecution[2] and harassing communications charges. Hall eventually pled guilty to the hindering prosecution and contempt charges. All other charges, including the solicitation and intimidation counts, were ultimately dismissed.

### B.  Procedural History

Hall filed this case on December 28, 2016 and timely filed an amended complaint. In his amended complaint, Hall asserts federal claims under § 1983 against all defendants, alleging

---

[2] The hindering charge was based on Hall's decision to conceal Reeves in a closet during Bird's search of his home.

malicious prosecution, deprivation of liberty, behavior that shocks the conscience, a civil rights conspiracy, and abuse of process. He also asserts state-law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, defamation, false imprisonment, malicious prosecution, abuse of process, and respondeat superior.[3]

In response, Baxter, Steele, Hammons, and Trimble filed motions to dismiss; Bird and the City of Williamsburg (Williamsburg) answered the amended complaint. In his consolidated response to Baxter, Steele, Hammons, and Trimble, Hall argued that the district court should treat the motions to dismiss as motions for summary judgment, attached 80 exhibits, and requested discovery. The district court denied Hall's motion for discovery and treated defendants' motions as motions to dismiss, explaining that it would consider the criminal complaint on the solicitation charge, but would "decline to consider the remaining exhibits because they address matters beyond the Complaint." (R. 110, PID 1747.) The district court dismissed all claims against Baxter, Steele, Hammons, and Trimble. Hall responded by filing a motion for reconsideration and for sanctions, which the district court denied.

Meanwhile, Bird and Williamsburg had been conducting discovery with Hall since they filed their amended answer on April 26, 2017. On May 25, 2017, Bird and Williamsburg filed a joint motion to dismiss or, alternatively, for judgment on the pleadings. On August 24, 2017, the district court granted the motion in part and denied it in part. The next day, Bird and Williamsburg filed a motion for discovery sanctions, claiming that Hall failed to disclose documentation related to a prior arrest. On August 31, 2017, Bird and Williamsburg filed another motion for sanctions

---

[3] Of these substantive counts, Hall appeals only the dismissal of his federal and state malicious prosecution claims, as well as his state-law intentional infliction of emotional distress claim.

based on Hall's failure to appear for his deposition and comply with a discovery order. On September 27, 2017, Bird and Williamsburg filed their motion for summary judgment.

A few weeks later, the parties began settlement discussions. On October 16, 2017, Bird and Williamsburg accepted Hall's offer to settle the case for $1000 and filed a notice of settlement that same day. The next day, the district court canceled all deadlines and ordered the parties to submit an agreed order of dismissal by November 16, 2017. Defense counsel sent the settlement documents to Hall, but Hall did not comply with the court's order, explaining in an email sent to defense counsel on November 10, 2017, that although he "fully intended to settle[,]" his ongoing legal issues meant that he would have to delay. (R. 220-5, PID 2812.) On November 22, 2017, Bird and Williamsburg filed a motion seeking to enforce the settlement agreement and requesting attorneys' fees. The district court granted the motion on January 26, 2018, directing the parties to file an agreed order of dismissal within fifteen days, but denying the request for costs and fees. Again, Hall did not sign the settlement agreement. Three months later, on February 27, 2018, the district court dismissed Hall's claims against Bird and Williamsburg for failure to prosecute under Rule 41(b) and awarded Bird and Williamsburg attorneys' fees and costs of $3040.50. In response, Hall filed ten post-judgment motions, including a motion to disqualify the district judge. In a consolidated order, the district court denied Hall's post-judgment motions.

## II. DISCUSSION

### A. Hall's Motion to Disqualify the District Judge

We review a judge's decision on a motion to disqualify for an abuse of discretion. *Johnson v. Mitchell*, 585 F.3d 923, 945 (6th Cir. 2009).

A judge's prejudice or bias may stem from either personal or extrajudicial sources or arise during the course of current or prior proceedings. *Liteky v. United States*, 510 U.S. 540, 555

(1994); *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012). 28 U.S.C. § 455 governs the recusal of federal judges. Subsection (b) enumerates specific situations that require a judge to disqualify himself or herself, regardless whether the conflict of interest creates an appearance of impropriety:

> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> . . .
> (4) He knows that he, individually or as a fiduciary, or his spouse . . . has a financial interest in the subject matter in controversy . . . or any other interest that could be substantially affected by the outcome of the proceeding; [or]
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
> . . .
> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; [or]
> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. § 455(b)(1)-(5).

Although a judge must recuse himself or herself when someone within a third degree of relationship to the judge or the judge's spouse is acting as a lawyer in the proceeding, recusal is not automatically required when the relative is merely employed by the law firm representing a party in the proceeding. *See Cloverdale Equip. Co. v. Manitowoc Eng'g Co.*, 964 F. Supp. 1152, 1155 (E.D. Mich. 1997) (holding that a judge's kin does not have an "'interest that could be substantially affected' when he or she is an associate, as opposed to a partner, in a law firm representing a party to the action and does not actively participate in the proceeding" (quoting 28 U.S.C. § 455(b)(4))), *aff'd*, 149 F.3d 1182 (6th Cir. 1998); *Brown v. Burch, Porter, and Johnson, PLLC*, Nos. 15-6242/6243, 2016 WL 9448027, *4 (6th Cir. Nov. 21, 2016) (holding that recusal

was not required where the judge's relative "did not act as a lawyer in the proceeding, and . . . [did not] have a financial interest in the proceeding").

Hall argues that the district judge was biased in favor of defendants, or "at a minimum there is an appearance of impropriety." (Appellant Br. at 25.) However, none of the three reasons cited by Hall show that the judge was required to recuse himself. First, Hall argues that the district judge allegedly "failed to disclose his relatives who had worked with Trimble and Mann until after he had entered judgment in favor of his relatives' favored parties." (*Id.* at 26.) Hall asserts that the district judge's sister was employed by Trimble & Mann, P.S.C. (now Howard O. Mann, P.S.C.) in 2002, and that the district judge's nephew was employed by the firm in 2015. The district judge, however, did not have to disclose these relationships because there is no "statutory or judicial authority requiring a judge" to explain to counsel family connections that would not result in recusal. *Raggozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1080 (6th Cir. 2015). The district judge's sister worked at the firm approximately 15 years before Hall filed this case, and his nephew worked there 18 months prior. Neither the district judge's sister nor nephew worked on Hall's case. The district judge thus had no obligation to disclose these relationships. Further, because no reasonable person could question the judge's impartiality on the basis of these attenuated relationships, there is no appearance of impropriety.

Second, Hall argues that the district judge showed bias when he "denied Hall's pro se motion for an extension . . . to respond to a motion due to the death of a family member, whose funeral and visitation were scheduled the same day as the deadline." (Appellant Br. at 26.) Hall asserts that the district court "routinely granted the motions for extensions of time requested by the defendants, or allowed them to file out of time, in this case." (*Id.*) The district court explained that it was denying Hall's motion for a sixty-day extension of time to respond because the length

of time was "not reasonable" considering the "relatively narrow issue" presented by defendants' motion and Hall's "repeated[] fail[ures] to comply with Court-imposed deadlines." (R. 231, PID 2863.) The district court gave ample reason for denying the extension of time, and such a decision is not evidence of bias. *American Civil Liberties Union of Kentucky v. McCreary County*, 607 F.3d 439, 451 (6th Cir. 2010) (holding that "a district court has broad discretion to manage its docket," including the ability to enforce deadlines); *see also Reales v. Consol. Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996) (recognizing district court's authority to enforce deadlines and deny extensions); *United States v. Microsoft*, 253 F.3d 34, 100 (D.C. Cir. 2001) ("[A]n appellate court will not interfere with the trial court's exercise of its discretion to control its docket . . . except upon the clearest showing that the procedure resulted in actual and substantial prejudice to the complaining litigant." (quoting *Ely Lilly & Co., Inc. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1105 (5th Cir. 1972))).

Third, Hall argues that the district court showed partiality by ruling that the statute of limitations barred a malicious prosecution claim against Trimble based on the intimidation charge but did not bar the same claim against Bird. Hall does not challenge the underlying rulings and simply argues that they show bias. But Hall fails to otherwise connect the judge's relatives' employment to the court's statute of limitations analysis; and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . [T]hey are proper grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555.

Hall also argues that the district judge's relatives could be material witnesses regarding Trimble's "character, biases, and the manner in which his handling of Hall's case differ[s] from his work on other similar cases . . . ." (Appellant Br. at 25.) But the district judge's relatives could not possibly have anything to add as witnesses in this case, and in the remote event that they were

called to testify, recusal is not required "when other witnesses are available to provide the same testimony." *United States v. Lanier*, 2:14-CR-83, 2018 WL 296725, at * 3 (E.D. Tenn. Jan. 3, 2018) (explaining that "unsubstantiated speculation" that a judge or his family member may be a material witness "is not enough to require recusal . . ."). In short, Hall has given us no reason to find that the district court abused its discretion in denying Hall's motion to recuse.

### B. Hall's Claims Against Baxter and Trimble

We review de novo the grant of a motion to dismiss under Rule 12(b)(6). *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Courts must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1. Whether Trimble is Entitled to Absolute Immunity on Hall's Malicious Prosecution Claim

"An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976). Absolutely protected acts include those "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State . . . ." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). We have employed a "functional approach" to determine whether a prosecutor is entitled to absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it" when assessing whether conduct is prosecutorial, and thus absolutely protected. *Id.* at 269 (citation omitted).

Absolute immunity protects "only . . . actions that are connected with the prosecutor's role in judicial proceedings, not . . . every litigation-inducing conduct." *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) (alteration in original) (quoting *Burns v. Reed*, 500 U.S. 478, 494 (1991)). Absolute immunity is not available to prosecutors when they perform "'investigative' or 'administrative' functions unrelated to judicial proceedings." *Id.* In addition, a prosecutor is not entitled to absolute immunity when he acts as a complaining witness by making sworn statements to the court in support of a criminal complaint. *Kalina v. Fletcher*, 522 U.S. 118, 129-131 (1997).

Hall argues that Trimble is not entitled to absolute immunity because he performed "investigative" functions not related to his prosecutorial duties. Hall asserts that Trimble "gave legal advice" by instructing Baxter to "obtain a search warrant and seize all of Hall's computers, including his attorney client privileged communications." (Appellant Br. at 38.) Hall also alleges that Trimble and Baxter "decided to have Hall arrested because, by Baxter's own admission under oath, Hall had obtained his concealed carry permit." (*Id.*) Yet Trimble's actions in seeking search and arrest warrants are "prosecutorial" functions that are protected by absolute immunity. *See Burns*, 500 U.S. at 491-92 (holding that a prosecutor is absolutely protected when seeking a search warrant as part of a future prosecution); *Kalina*, 522 U.S. at 129 (holding the same for arrest warrants). Further, as the district court noted, Hall's Complaint contains no allegations that Trimble gave Baxter legal advice regarding the investigation of the case. Rather, the Complaint alleges that Trimble instructed Baxter to obtain an arrest warrant. Hall's Complaint thus provides no support for the claim that when Trimble sought search and arrest warrants he acted in an investigatory capacity that was not protected by absolute immunity.

Hall next argues that Trimble "swore out the false complaint for the intimidation charge, where he was the alleged victim and only witness," noting that Trimble eventually recused himself

and the charge was never indicted. (Appellant Br. at 38.) Hall also asserts that Trimble "subpoenaed Hall's phone records to investigate the intimidation charge." (*Id.*) However, the district court found that Hall's claim for malicious prosecution against Trimble based on the intimidation charge is barred by the statute of limitations. Hall does not appeal that ruling.

Trimble is similarly entitled to absolute immunity on Hall's state-law malicious prosecution claim. The Commonwealth of Kentucky analyzes absolute immunity in the same manner as the federal courts. *See McCollum v. Garrett*, 880 S.W.2d 530, 534 (Ky. 1994) (discussing *Buckley*, *Burns*, and *Imbler* and holding that absolute immunity applies when the prosecutor "is acting within the scope of his authority," regardless whether the actions "were necessarily preliminary to the initiation of a prosecution"). Hall's malicious prosecution claim under state law was identical to his federal malicious prosecution claim. For the reasons above, Hall's state malicious prosecution claim against Trimble is barred by absolute immunity.

2. **Whether Baxter is Entitled to Dismissal Based on Hall's Failure to State a Claim for Malicious Prosecution**

 To state a federal § 1983 claim for malicious prosecution, a plaintiff must allege facts meeting four elements:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Robertson v. Lucas,* 753 F.3d 606, 616 (6th Cir. 2014). In Kentucky, a malicious prosecution plaintiff must also allege that the defendant acted with malice. *Prewitt v. Sexton*, 777 S.W.2d 891, 895 (Ky. 1989).

Probable cause to prosecute exists when "the facts and circumstances are sufficient to lead a reasonable person to believe that the accused committed the particular offense with which he is charged." *Webb v. United States*, 789 F.3d 647, 666 (6th Cir. 2015).

Here, the district court found that Hall failed to state a claim for malicious prosecution against Baxter on the face of the complaint because probable cause supported the criminal prosecution on the solicitation charge.[4] Hall disputes that there was probable cause supporting the solicitation charge, asserting that he was not in Tennessee "at the time the IP address, located in Kentucky, was used to post on Topix website." (Reply Br. at 1.) Hall complains that the charge "was entirely the result of the IP address" and "the officers knew that Ms. Reeves had access to the open network at this IP address[.]" (Appellant Br. at 32-33.) Hall further argues that the district court erred by "refus[ing] to consider Baxter's false testimony in the preliminary hearing or grand jury proceeding, or his false police report." (*Id.* at 31.)

Hall's arguments are unavailing. First, Baxter is absolutely immune from liability to the extent Hall's claim is based on Baxter's testimony before the grand jury. *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony."). Second, Hall's Complaint does not allege that Baxter made, influenced, or participated in the decision to prosecute him, but instead states that Trimble directed Baxter to obtain an arrest warrant on the solicitation charge. Therefore, Baxter cannot be liable for malicious prosecution unless he provided Trimble with false information. *Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002) (holding that officer "cannot be held liable for

---

[4] Baxter argues—both on appeal and below—that Hall failed to state a claim for malicious prosecution or alternatively that Baxter is entitled to qualified immunity. The district court determined that Hall failed to state a claim for malicious prosecution and therefore did not reach Baxter's arguments on qualified immunity. We analyze Hall's claims in the same fashion, noting that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015).

malicious prosecution when he did not make the decision to prosecute"); *Miller v. Maddox*, 866 F.3d 386, 390-91 (6th Cir. 2017) (holding that material false testimony or misrepresentations or omissions can constitute influencing the decision to prosecute).

Hall does argue that Baxter made false statements in the police report and testified falsely at the preliminary hearing. Hall alleges in his Complaint that Baxter falsely testified at the preliminary hearing that Davis took the posting as a serious threat, Baxter had never spoken to Davis, and Baxter's testimony conflicted with Sowders' statement "that Davis could not identify any possible suspects or anyone who might have created and posted the Topix Post." (R. 31, PID 352.) In a different paragraph of his Complaint, Hall alleges that after the case was transferred to Post 11 in London, "Baxter revised his report to state that the 'only person' who would have written the Topix post was Hall, based on what appears to have been a 'new and improved' statement by Davis which contradicted her first statement." (*Id.*) Relatedly, Hall argues that the district court should have considered the documents submitted in response to the motion to dismiss, which included Sowders's report and Baxter's report.

Because Hall referred to these documents in his Complaint and asked the district court to consider them, we will consider them here. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (explaining that when a document "appear[s] in the record," and is "referred to in the complaint" the "court may consider" it "so long as [it is] central to the claims contained therein.") (citation omitted).

We ask whether Baxter's allegedly false statements or omissions influenced the prosecution by improperly representing that there was probable cause to prosecute Hall, where an accurate statement of the facts would not have supported probable cause. Sowders's report states that he spoke to Davis on January 10, 2013 and that she believed the threat was directed at her.

She thought that it was intended to intimidate and harass her, although she did not take it seriously. She could not identify any possible suspects and stated that she had no problems with anyone that she was aware of. Sowders contacted Davis again on January 18, 2013. She identified Hall as a potential suspect, stating that Hall had inquired about investing in a restaurant she was opening, and that she barely knew Hall and declined his offer. She explained that she felt that Hall had been angry about this situation, and she said she had no further details about the incident. In contrast, Baxter's report stated that on January 14, 2013, Sowders spoke with Davis, who said that the only person she believed would do this is Hall; that a couple of years ago Hall wanted to be partners in a restaurant she and another partner owned, but she did not want to be partners with him because of things she had heard about him; that she felt Hall had been the one putting bad comments about her on Topix for a long time but could not prove it; and that when the solicitation was posted she became afraid and called the police.

Taking the Complaint's allegations as true, and drawing all reasonable inferences in favor of Hall, we assume that Baxter had no basis for the information added to Sowders's account. We then ask whether the added or omitted information was material and created probable cause where it was otherwise lacking.

Probable cause does not require proof that Hall committed the charged offense; instead, it is a "fluid concept" that does not present a "a high bar." *District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018). After being alerted to the anonymous Topix post seeking to have Melissa Jones killed and her body concealed, law enforcement identified the IP address from which the post originated, and obtained subscriber information connecting the Topix post to Hall's IP address. Sowders's report established that Davis thought she was the intended target of the posting. In her initial interview, Davis viewed the posting in a benign light, but she later identified Hall as a

possible suspect and explained why she thought Hall was angry with her. Although Baxter's account casts Hall in a more negative and threatening light, Sowders's account alone, together with the information that the IP address belonged to Hall, was enough to create reasonable grounds for belief supported by "more than a mere suspicion" that Hall was responsible for the Topix post. *United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005). Thus, because Hall's prosecution was supported by probable cause without regard to Baxter's report and testimony, Hall has failed to state a malicious prosecution claim against Baxter under either § 1983 or Kentucky state law.

       **3.**       **Whether Trimble is Entitled to Dismissal Based on Hall's Failure to State a Claim of Intentional Infliction of Emotional Distress**

Hall claims that Trimble intentionally inflicted emotional distress on him when Trimble "enlisted Brandon Petrey to assault Hall in an effort to scare and intimidate him" and then "rewarded Petrey quid pro quo for his assault of Hall by recommending a drastically reduced sentence to his pending charges." (Appellant Br. at 38.) Hall argues that Trimble acted outrageously by "using his power as a prosecutor to entice an inmate to attack Hall," which inflicted "considerable emotional injury" on him as a result. (*Id.* at 40.)

In Kentucky, the elements of intentional infliction of emotional distress, or outrage, are: 1) the wrongdoer's conduct must be intentional or reckless; 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; 3) there must be a causal connection between the wrongdoer's conduct and the plaintiff's emotional distress; and 4) the emotional distress must be severe. *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990). Kentucky courts have held that the tort of outrage is a "gap filler," and that "[w]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will

not lie." *Bennett v. Malcomb*, 320 S.W.3d 136, 137 (Ky. Ct. App. 2010) (quoting *Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. Ct. App. 2001)).

Analogizing to *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295 (Ky. Ct. App. 1993), the district court dismissed Hall's claim, concluding that Hall should have brought a claim for civil battery, and that Hall's Complaint does not assert that Trimble acted only to cause Hall severe emotional distress.

Hall disagrees with the district court's rationale and application of *Rigazio*, which involved an IIED claim against a priest who committed an assault and battery against one of his minor parishioners. Hall argues that *Rigazio* is inapposite because the priest was the same party who committed the assault and battery, whereas Hall's claim for IIED "is against a third party, not the perpetrator of the physical attack." (Appellant Br. at 40.) Although the facts of *Rigazio* are not identical to this case, the district court properly cited *Rigazio* for the proposition that a claim for IIED cannot survive if a traditional tort can address the alleged conduct. *See Rigazio*, 853 S.W.2d at 299 ("[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery of emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie.").

Hall's allegation that Trimble enticed Petrey to attack Hall qualifies as battery under Kentucky law. *See Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000). Further, Hall's Complaint does not allege that Trimble acted to cause him emotional distress; rather, Hall's Complaint alleges that Trimble ordered a physical attack "in furtherance of his scheme and malicious efforts to keep Hall in jail for crimes he knew Hall did not commit. . ." (R. 31, PID 378.) Thus, Hall's Complaint more properly alleges a battery under Kentucky law, and the district court did not err in holding

that Hall did not properly plead a claim for IIED. *See Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky. Ct. App. 1999) (stating that "there is a clearly developed paradigm for outrage: when actions or contact is intended only to cause extreme emotional distress in the victim").

### C. Hall's Claims Against Bird and City of Williamsburg

Hall argues that the district court erred by (1) enforcing the settlement agreement, which was unenforceable under Kentucky law, and refusing to set aside the settlement agreement on the grounds of duress; and (2) dismissing Hall's claims for failure to prosecute under Rule 41(b).

### 1. Whether the Parties Reached an Enforceable Settlement Agreement under Kentucky Law

"This Court reviews for clear error the district court's factual determination that the parties had agreed to settlement terms; however, we review the district court's decision to grant a motion to enforce the settlement based on its preliminary factual finding for an abuse of discretion." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645 (6th Cir. 2001) (citing *Therma–Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 418 (6th Cir. 2000)). Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law. *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)). The elements of a valid contract are "offer and acceptance, full and complete terms, and consideration." *Commonwealth v. Morseman*, 379 S.W.3d 144, 149 (Ky. 2012)

Hall argues that the district court erred in concluding that the parties arrived at a binding settlement agreement, asserting that even though the parties "orally agreed on a payment of $1000, the parties never agreed on all of the material terms for the proposed settlement," and without anything in writing, Hall should have been permitted to continue litigating his claims. (Appellant Br. at 46.) Hall argues that Kentucky has an "all-or-nothing" approach that requires an enforceable contract to have sufficient definiteness or else it "is unenforceable as something less." (*Id.* at 47

(citing *Giverny Gardens, Limited Partnership v. Columbia Housing Partners Limited Partnership*, 147 Fed. App'x 443, 448 (6th Cir. 2005).)

The record does not support Hall's assertion that the district court clearly erred in concluding that an agreement had been reached. As an initial matter, under Kentucky law the fact that a settlement agreement has not been formally executed does not render the agreement unenforceable. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 445 (Ky. 1997) (explaining that "[i]t has long been the law [in Kentucky] that the fact that a compromise agreement is verbal and not yet reduced to writing does not make it any less binding"). Although courts interpreting Kentucky law have refused to enforce preliminary business agreements, *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. Ct. App. 1998), and letters of intent with material terms left open, *Giverny Gardens*, 147 Fed. App'x at 44, the settlement agreement here satisfied all the elements of a contract.

The settlement agreement was supported by "offer and acceptance, full and complete terms, and consideration." *Morseman*, 379 S.W.3d at 149. On October 12, 2017, Hall wrote an email to Bird and Williamsburg, explaining that he had "decided to let go of the lawsuit" and would not be filing any other pleadings or appeals. (R. 255-1, PID 3047.) The next day, Hall made an offer to Bird and Williamsburg, stating "If you can still do the $1000, I'll take it and you can go ahead and file an agreed order with my permission," noting that he had been in a car accident a couple of weeks earlier and "could use [the money]." (R. 220-1, PID 2808.) On October 16, 2017, Bird and Williamsburg accepted Hall's offer and filed a notice of settlement that same day. On October 24, 2017, Bird and Williamsburg sent Hall a copy of the $1,000 settlement check, an agreement and release, an agreed order of dismissal, and a notarized copy of the settlement agreement. On November 6, 2017, Hall again agreed to the terms of the agreement—$1000 in

exchange for dismissal of the lawsuit—promising in two different emails to return the signed and notarized forms. As a result, all the necessary elements of contract formation were met, even if Hall never cashed the check and signed the release.

Hall's argument that the district court "improperly refused to grant Hall an evidentiary hearing to determine whether there was an enforceable settlement agreement" is unavailing for the same reasons. (Appellant Br. at 48.) The record shows that Hall intended to settle this case, and, because the settlement agreement "is clear and unambiguous and no issue of fact is present[,]" the district court did not abuse its discretion by summarily enforcing the settlement agreement without an evidentiary hearing. *Edwards v. Hocking Valley Cmty. Hosp.*, 87 Fed. App'x 542, 546-47 (6th Cir. 2004) ("Thus, summary enforcement of a settlement agreement, as in this case, is appropriate when there is no substantial dispute regarding the existence of the agreement and the terms are unambiguous.").

Hall further contends that the oral agreement regarding the $1000 was "procured by duress," asserting that defendants were intimidating Hall by following him, parking in front of his relatives' homes, and attempting to plant illegal drugs on him. (Appellant Br. at 49.) However, Hall raised the issue of duress in post-judgment motions only. The district court was not obligated to address Hall's untimely argument and correctly observed that "Hall's post-judgment argument that he only entered into the settlement agreement under duress does not change this result" because "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." (R. 281, PID 3304 -3305 (quoting *Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014).)

**2.** **Whether the district court erred by dismissing Hall's claims for failure to prosecute under Rule 41(b)**

"We apply the abuse-of-discretion standard when reviewing a district court's decision to dismiss a lawsuit for failure to prosecute." *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005).

We generally consider four factors when determining whether dismissal for failure to prosecute was within the district court's discretion: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action. *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001). However, none of the four factors are "outcome dispositive." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008). We instead focus on whether "there [was] a clear record of delay or contumacious conduct." *Id.*

Hall argues that the district court erred by "fail[ing] to apply the four factors." (Appellant Br. at 44.) First, Hall asserts that although some of his litigation tactics may have been "coarse or dilatory," he did not show willfulness or bad faith. (*Id.*) Second, Hall asserts that there was no prejudice to Bird or Williamsburg, explaining that he complied with discovery demands, did not refuse to be deposed, and had good reasons for not disclosing a previous arrest in Virginia. Third, Hall contends that the district court did not warn him that it would dismiss his entire case with prejudice prior to doing so. Fourth, Hall claims that the district court did not consider less drastic sanctions before dismissing his claims.

The district court did not abuse its discretion in dismissing Hall's claims with prejudice. As to the first and second factors, Hall refused to provide complete details of previous arrests;

attend his own deposition; and submit an agreed order of dismissal after the court canceled all the summary judgment deadlines based on the settlement. Hall's explanations why he could not comply with discovery are not persuasive: Hall was required to disclose his past arrest history (even if he had no pertinent documentation) as well as attend his own deposition (even if he was intending to hire counsel). Moreover, Hall's repeated failures to sign an agreed order of dismissal, based on a valid settlement agreement between the parties, created a clear record of delay.

As to the third factor, Hall was already on notice that the district court could dismiss his case at any time. On January 26, 2018, the court issued an order requiring the parties to comply with the settlement agreement and allowing Bird and Williamsburg to renew their motion for attorney's fees and costs in the event that Hall did not comply. Defense counsel sent Hall an email informing him of the court's order and Hall responded that he would not "be signing anything." (R. 224-1, PID 2829.) Shortly thereafter, Bird and Williamsburg moved to dismiss the action under Rule 37(b) and renewed their request for attorney's fees and costs. Hall then failed to timely respond to the motion. On February 27, 2018, the court granted Bird's and Williamsburg's motion to dismiss and motion for attorney's fees and costs, noting that Hall had repeatedly disregarded the court's instructions to tender an agreed order of dismissal. The court repeatedly signaled to Hall that there would be consequences if he did not comply with its orders and the court was therefore not obligated to issue a formal warning that dismissal was imminent. *See Universal Health Group v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) (affirming dismissal of complaint where bad faith was found, even though "there was no explicit warning of dismissal").

Regarding the fourth factor, the record shows that Bird's and Williamsburg's repeated motions and the district court's orders were not enough to compel Hall "to do what the rules required." *Id.* at 956 (affirming dismissal against party whose "conduct violated the rules of civil

procedure and common courtesy alike"). In any event, the district court had discretion to dismiss the case and was not required to impose a penalty short of dismissal. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) (noting that the factor of "consideration or imposition of lesser sanctions is a factor in our review, [but] not a sine qua non for affirmance"). Accordingly, the district court did not err in dismissing Hall's claims against Bird and Williamsburg and awarding attorneys' fees and costs.

### III.  CONCLUSION

Because the district court did not err in denying Hall's motion to disqualify, dismissing Hall's claims against Baxter and Trimble, and enforcing Hall's settlement agreement with Bird and Williamsburg and dismissing Hall's case when he did not comply, the district court's decision is **AFFIRMED**.